# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MONICA BURNETT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>Defendant. ) | Case No. CIV-20-848-AMG |

## MEMORANDUM OPINION AND ORDER

Monica Burnett ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and supplemental security income ("SII") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 11, 15), and the parties have fully briefed the issues. (Docs. 18, 23).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 14, 17). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

**I.     Procedural History**

Plaintiff filed applications for DIB and SSI on August 1, 2018, alleging a disability onset date of August 1, 2017. (AR, at 61, 254). The SSA denied the applications initially and on reconsideration. (*Id*. at 141-44; 153-608). Then an administrative hearing was held on October 21, 2019. (*Id*. at 32-58). During the hearing, Plaintiff amended her alleged onset date to May 25, 2018. (*Id*. at 253). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 12-31). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**II.    The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 25, 2018, the amended alleged onset date. (AR, at 17). At Step Two, the ALJ found that Plaintiff had the following severe impairments: "systemic lupus erythematosus; asthma; obesity; depression disorder; anxiety disorder; and trauma disorder." (*Id*.) At Step Three, the ALJ found that Plaintiff's impairments failed to meet or medically equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (*Id*. at 18). The ALJ then determined that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she may never climb ladders, ropes, or scaffolds: and she may occasionally climb ramps and stairs. She may frequently stoop; and she may occasionally kneel, crouch, and crawl. She may tolerate occasional exposure to environmental irritants such as odors, fumes, dusts, and gases. Her work

must be limited to simple, routine, and repetitive tasks with occasional interaction with coworkers, supervisors, and the public.

(*Id*. at 20).  Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work.  (*Id*. at 24).  At Step Five, however, the ALJ found when "considering claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" such as a document preparer, bench hand, or toy stuffer.  (*Id*. at 25).  Thus, the ALJ found that Claimant had not been under a disability since May 25, 2018.  (*Id*. at 26).

### III. Claims Presented for Judicial Review

On appeal, Plaintiff raises two issues.  (Doc. 18).  First, Plaintiff alleges that the ALJ improperly considered the state agency opinions of Drs. Swisher and Cochran.  (*Id*. at 3-9).  Plaintiff believes the two opinions are incongruent and that the ALJ could not have properly found both persuasive.  (*Id.*)  Next, Plaintiff accuses the ALJ of improperly analyzing the consistency of Plaintiff's statements.  (*Id.* at 10-15).  Specifically, Plaintiff complains that the ALJ found some of her statements inconsistent, but then used her statements to determine the persuasiveness of medical opinions.  (*Id.*)

The Commissioner, however, asserts that the ALJ evaluated the consistency of Plaintiff's subjective complaints in accordance with SSA's regulatory and policy guidelines, as well as Tenth Circuit precedent, and properly found that many of Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record." (Doc. 23, at 6).  The Commissioner also contends that while the ALJ properly

considered the prior mental administrative medical findings provided by the state's consultants, any unresolved inconsistency alleged by Plaintiff caused no harm. (*Id.* at 8).

## IV. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921; *see* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-

4

51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v.*

---

[3] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a)(1).

5

*Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**V.     Analysis**

    **A.     The ALJ Adequately Analyzed the State Agency Medical Opinions.**

Plaintiff highlights four areas where she believes the ALJ's analysis failed regarding the medical opinions of state agency doctors Lisa Swisher and Randy Cochran, who reviewed the record at the initial level and on reconsideration, respectively. (Doc. 18, at 3-9). Plaintiff contends the ALJ could not find both doctors' opinions persuasive, due to alleged inconsistencies between the two opinions. (*Id.*) Plaintiff asserts that either the ALJ

failed to find Dr. Swisher's opinion persuasive or, in finding both opinions persuasive, the ALJ erred because Dr. Swisher's opinion conflicts with the RFC crafted by the ALJ and Dr. Cochran's opinion. (*Id.*)

Dr. Swisher and Dr. Cochran's opinions share nearly identical findings, with only small or insignificant differences. Although the ALJ could have been more explicit in her wording, a common sense reading of the decision leads to the conclusion that, after summarizing the findings in the two opinions, the ALJ stated that she found them both persuasive. (AR, at 23). *See Keyes-Zachary v. Astrue*, 695 F.3d at 1156, 1167 (10th Cir. 2012) ("[C]ommon sense, not technical perfection, is our guide."). The ALJ then crafted an RFC consistent with both opinions and favoring Plaintiff as to mental demands. (AR, at 20). In the one area in which the RFC differed significantly from these persuasive opinions, the ALJ explained and supported her reasoning with substantial evidence.

In support of her inconsistency allegations, Plaintiff first points to the discrepancy in the doctors' limitations regarding Plaintiff's ability to perform complex tasks. (Doc. 18, at 5). While Dr. Cochran opined that Plaintiff could "perform simple and some complex tasks," Dr. Swisher only opined that Plaintiff could "perform simple tasks." (*Id.* (*comparing* AR, at 93-94, *with* AR, at 137)). The ALJ, however, adopted the more restrictive limitation in formulating the RFC, finding that Plaintiff's "work must be limited to simple, routine, and repetitive tasks." (AR, at 20). The ALJ's adoption of the more restrictive limitation benefits Plaintiff, and thus Plaintiff cannot show she suffered any harm warranting remand. *See Keyes-Zachary*, 695 F.3d at 1162-63 (finding no reversible error where "giving greater weight to [the doctor's] opinion would not have helped her");

7

*see also Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (finding a claimant must challenge a finding that is sufficient by itself to support the denial of her benefits in order to be successful on appeal).

Plaintiff next alleges that the ALJ erred in failing to include the qualifier "in a familiar setting" both when questioning the Vocational Expert ("VE") about Plaintiff's ability to do simple work and in her RFC. (Doc. 18, at 6). While Dr. Swisher opined that Plaintiff could "perform simple tasks in a familiar setting," Dr. Cochran added no such language. (*Id.* (*comparing* AR, at 93-94, *with* AR, at 137)). The ALJ's RFC, however, specified that Plaintiff could perform "simple, routine, and repetitive tasks." (AR, at 20). Common sense dictates that such tasks in unskilled work be performed in a "familiar setting." *Keyes-Zachary*, 695 F.3d at 1167. The ALJ's RFC encompassed both the simplicity and familiarity described in the medical consultants' opinions, making the additional phrase "in a familiar setting" unnecessary. *See Bourlard v. Colvin*, 2014 WL 2112669, at *3 (W.D. Okla. May 20, 2014) (unpublished) (finding harmless error where the hypothetical question presented to the VE did not include all the limitations from the RFC, including the need to be in a familiar setting, because the VE identified unskilled work, and unskilled work was done in a familiar setting); *Brown v. Colvin*, 2014 WL 903174, at *10 (W.D. Okla. Mar. 14, 2014) (unpublished) (holding that unskilled work was consistent with a number of limitations, including the need to perform work in a familiar setting).

Next, Plaintiff complains that the ALJ failed to include the limitation, found in both consultants' opinions, of *superficial* contact with supervisors and co-workers. (Doc. 18, at

7-8). Instead, the ALJ provided for *occasional* interaction with coworkers and supervisors. (AR, at 20). And while Plaintiff proffers that superficial contact is less than occasional contact, Plaintiff offers no authority to support that claim. The Court finds that the ALJ's use of the SSA's term "occasional" – which is a term of art used to denote the lowest frequency of activity other than "not present"[4] – adequately incorporates the doctors' findings. "To conclude otherwise would parse the ALJ's language too finely." *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015) (unpublished) ("Interacting with supervisors in the course of routine supervision over simple work is tantamount to the 'superficial' interaction typically encountered in jobs involving such work."). *See also Maurice W. v. Comm'r Soc. Sec. Admin*, 2019 WL 1115307, at *6-7 (D. Kan. Mar. 11, 2019) (unpublished) (holding that the RFC for simple, routine, and repetitive tasks was consistent with a limitation to superficial interaction with others); *Ganer v. Berryhill*, 2017 WL 3610537, at *6 (D.N.M. Feb. 23 2017) (unpublished) (finding that an RFC limiting plaintiff to "occasional" interaction with supervisors and co-workers sufficiently incorporates doctor's conclusion that claimant can interact appropriately with coworkers and supervisors on an "incidental basis").

Lastly, Plaintiff asserts that the ALJ erred when she failed to include in Plaintiff's RFC the doctors' finding that Plaintiff could have no contact with the general public. (Doc.

---

[4] The SSA defines the frequency of physical demands as follows: Constantly: activity or condition exists two-thirds or more of the time; Frequently: activity or condition exists from one-third to two-thirds of the time; Occasionally: activity or condition exists up to one-third of the time; Not Present: activity or condition does not exist. <u>Medical and Vocational Quick Reference Guide</u>, SSA Program Operations Manual System, DI 25001.001, *see* https://secure.ssa.gov/poms.nsf/lnx/0425001001.

18, at 8-9; *see* AR, at 23).  While the ALJ noted the limitation, she explained that she found the limitation inconsistent with Plaintiff's examination findings of "cooperative, pleasant, and conversant behavior."  (AR, at 24).[5]  Notably, much of the evidence that the ALJ relied on in making this decision was not available to the doctors when they crafted their opinions.[6]  Thus, it stands to reason that the doctors' opinions might be inconsistent with later submitted evidence they had no opportunity to examine.

While Plaintiff argues that the evidence considered by the ALJ fails to capture her ability to interact with the general public because these were doctors "whom she knows and trusts," Plaintiff fails to mention that many of these 'trusted doctors' Plaintiff interacted with only once or twice.  (*See* footnote 5).  Plaintiff's history of pleasant and cooperative interactions with medical staff provides substantial evidence to support the ALJ's finding that Plaintiff may have occasional interaction with the public.  "Concluding otherwise

---

[5] *See, e.g.,* AR, at 1027, 1032 (noting that Plaintiff was pleasant at emergency department visits with Dr. Fish); AR, at 1057 (noting that Plaintiff was pleasant during an emergency department visit with Dr. Dobbins); AR, at 1068 (noting that Plaintiff was cooperative during an emergency department visit with Dr. Raparthi); AR, at 1084 (noting that Plaintiff was cooperative during an emergency department visit with PA Pornis); AR, at 1330 (noting that Plaintiff was cooperative during a one-time office visit with Dr. Henderson); AR, at 1407 (noting that Plaintiff was pleasant during an office visit with Dr. Bautista – who was not her primary care provider); AR, at 1816 (noting that Plaintiff was smiling and playful during her visit with PA Hart); AR, at 1862 (noting that Plaintiff was very pleasant during first visit with Dr. Ekambaram).

[6] *See* AR, at 127 (noting that the last evidence received was from the Oklahoma Arthritis Center); *id.* at 1238-59 (evidence from the Oklahoma Arthritis Center, dated 5/25/18 to 8/24/18); *compare id.* at 348-1259 (evidence available to doctors) *with id.* at 1330 (dated 10/30/18), 1407 (dated 12/11/18), 1816 (dated 10/30/18), 1862 (dated 10/9/19) (evidence available to ALJ).

would require us to reweigh the evidence, a task we may not perform." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016); *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citation and quotation omitted).

### B. The ALJ Appropriately Analyzed the Consistency of Plaintiff's Statements.

Plaintiff claims the ALJ improperly analyzed the consistency of her statements by finding some of her statements "not entirely consistent with the medical evidence and other evidence in the record" and then using those same statements to determine the persuasiveness of medical opinions. (Doc. 18, at 11-12). Plaintiff claims that the ALJ, in using Plaintiff's statements to determine the persuasiveness of medical opinions, concedes that these statements are consistent with the medical and other evidence of record. (*Id.*) And, Plaintiff further contends, if these statements are consistent, "the ALJ failed to consider the limitations stemming from those allegations in the RFC." (*Id.*)

Plaintiff points to three areas where she believes the ALJ improperly used her statements:

> In evaluating the consistency of Nurse Practitioner (NP) David Sculce's opinion, the ALJ found, in relevant part, that NP Sculce's opinion was "no[t] consistent with . . . the claimant's subjective allegations of shortness of breath and pain." R. 23. Likewise, in evaluating Dr. Herbert Meites's opinion the ALJ reasoned, in relevant part, that "it is not consistent with the record as a whole . . . including the claimant's subjective allegations of fatigue,

11

> weakness, joint swelling and stiffness, and shortness of breath." R. 23. Finally, in evaluating the consistency of Dr. Randy Cochran's opinion — and possibly Dr. Lisa Swisher's opinion — the ALJ stated that "it is also generally consistent with the record as a whole, including . . . the claimant's subjective allegations of difficulty with concentration and brain fog and with her treatment and medication history." R. 24.

(*Id.* at 11-12).

Taking these allegations together, Plaintiff claims that her statements specifically regarding her "fatigue, shortness of breath, weakness, joint stiffness, concentration, and brain fog," were improperly discounted as "not entirely consistent" while simultaneously being used to determine the persuasiveness of medical opinions. (*Id.* at 13). However, the ALJ did not completely discard Plaintiff's statements regarding these symptoms or discount her impairments, as Plaintiff suggests. The ALJ stated:

> Although the claimant alleges significant limitations in her ability to lift, walk, sit, stand, and bend, she states that she is able to take care of her personal needs, drive, provide some care for family pets, and prepare her own meals (5E; hearing testimony). Despite her physical impairments, there is little in the record to suggest any significant functional loss. Her physical examinations have been generally unremarkable; she has exhibited 2/4 deep tendon reflexes; grossly intact, equal and bilateral strength and sensation; negative pronator drift; negative Romberg; normal muscle tone; normal gait and coordination; and normal range of motion (7F/189; 8F/70; 10F/4, 11; 12F/10, 26; 13F/12; 14F/23; 19F/9, 32). She has alleged difficulty with concentration, memory, and interaction with others; however, she has alleged that she spends time with family daily, she reads books, and she watches TV (5E; hearing testimony). The record notes that she reported she has more good days than bad and that her mood has been "okay" (21F/17). She reported that she is more distractible at night when she's not doing anything and that she focuses better during the day (21F/17). Despite her allegations of difficulty being around large groups of people, the record indicated she had gone to an outdoor festival in September 2018 (8F/65). Thus, overall, the alleged intensity,

> persistence and limiting effects of the claimant's impairments are not consistent with the objective medical and other evidence.

(AR, at 22-23). Indeed, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;" the ALJ simply did not fully credit Plaintiff's version regarding the "intensity, persistence and limiting effects of these symptoms." (*Id.* at 22). In fact, the ALJ's RFC explicitly accounted for Plaintiff's claimed symptoms:

> The claimant's residual functional capacity accounts for her lupus and obesity, and the **fatigue, pain and reduced mobility** they cause, by limiting her to sedentary work. The postural limitations further accommodate her **pain and stiffness**. The environmental limitations accommodate her asthma and **shortness of breath** it causes. Lastly, the limitation to simple, routine and repetitive tasks and limited interactions with others adequately accommodates her mental impairments and the **problems with memory, concentration, and dealing with others** they cause.

(*Id.* at 24) (emphasis added).

Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keys-Zachary*, 695 F.3d at 1167 (quotation marks omitted). The ALJ is entitled to resolve evidentiary conflicts. *Allman*, 813 F.3d at 1333. Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Zhu v. Comm'r, SSA*, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021). "Concluding otherwise would require us to reweigh the evidence, a task we may not perform." *Allman*, 813 F.3d at 1333. The Commissioner's decision is supported by substantial evidence and should be affirmed.

## VI. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 29th day of March, 2022.

*Amanda Maxfield Green*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE